UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JAN 13 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
         DEPUTY CLERK

| | |
|---|---|
| RIVER NORTH FURR'S, LLC, § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | Civil Action No. 5:19-cv-00757-OLG |
| FMP SA MANAGEMENT GROUP, § | |
| LLC, LARRY HARRIS, JASON KEMP, § | |
| ALLEN JONES and BRIAN PADILLA, § | |
| *Defendants.* § | |

## ORDER

On this day, the Court considered Defendants' Motion to Dismiss (docket no. 11) (the "Motion"). Having reviewed the Motion, Plaintiff's response (docket no. 16), Defendants' reply (docket no. 17) and the complaint (docket no. 1), the Court finds that the Motion should be DENIED.

## BACKGROUND

Plaintiff River North Furr's LLC ("Plaintiff") initiated this lawsuit against Larry Harris, Jason Kemp, Allen Jones, and Brian Padilla ("Individual Defendants") as well as Defendant FMP SA Management Group, LLC ("FMP"), for their failure to repay Plaintiff's investment in a food services company. *See* docket no. 1. According to the complaint, the Individual Defendants act as partners, making "business decisions together, shar[ing] control of their entities, and shar[ing] the profits from their business endeavors." *Id.* at ¶ 15. Through this partnership, the Individual Defendants jointly own and operate entities in the restaurant and the food services business. *Id.* This lawsuit arises out of one of these entities—Alamo Furr's LLC ("Alamo"). *Id.* at ¶ 1.

1

Plaintiff alleges that the Individual Defendants induced it to invest $1,750,000 in Alamo through false statements and then breached their contractual obligations when they failed to repay that investment. *See id.* The initial inducement came from representations by Defendant Jason Kemp, who allegedly "acted as the Individual Defendants' agent and spokesperson." *Id.* at ¶ 15. To start the transaction, Kemp allegedly called Steve Madlinger, one of Plaintiff's investors, seeking his investment in a new entity. Plaintiff alleges that Kemp "represented that he and his partners—the other Individual Defendants—had expertise, and experience in this industry and had regularly completed deals like this one" and "that no investor had ever lost money invested with them." *Id.* at ¶ 17. Moreover, Kemp represented that the repayment of the investment "would not depend on the success of Alamo," but rather that "he and his partners controlled a number of high-revenue entities that could act as guarantors for the loan." *Id.* at ¶ 18. Kemp asserted that one of those entities was BIII Wings, an entity owned by the Individual Defendants. *Id.* at ¶ 19. Importantly, Plaintiff alleges that, in order to assure it that BIII would support the guaranty, Kemp and the other Individual Defendants "promised not to change how BIII operated or to divert business or revenue from BIII." *Id.* Plaintiff then alleges that it relied on these representations in deciding to make the investment in Alamo. *Id.* at ¶ 20.

The parties then reduced their agreement to a written contract, which Plaintiff attaches to its complaint. *See* docket no. 1-1. Plaintiff stresses that the agreement states that "in order to induce" the investment, the Individual Defendants agreed "to cause BIII to provide a guaranty" with respect to its repayment. *Id.* at § 3.4; docket no. 1 at ¶ 21. This inducement language was also written into the guaranty, which was incorporated into the parties' agreement. Docket no. 1-1 (the guaranty "is in consideration of, and in order to induce" Plaintiff's investment in Alamo). Moreover, the guaranty document restates the assertions Kemp made in the initial negotiation:

2

specifically, that BIII's operation would not be changed nor would its business be diverted. *Id.* Notably, each of the Individual Defendants signed this agreement.

Despite these promises, Plaintiff alleges that shortly after the investment's closing, the Individual Defendants sold BIII's assets, rendering it "unable to back the Guaranty." Docket no. 1 at ¶ 27. Accordingly, the Individual Defendants agreed to make Defendant FMP the guarantor, replacing BIII. *Id.* at ¶ 30. Like BIII, the Individual Defendants owned FMP and allegedly asserted that its revenues were expected to maintain their current level and that they only had obligations on a commercial lease and some contracts. *Id.* Plaintiff alleges that the "Individual Defendants provided this information with the intent that [Plaintiff] would rely on it and accept FMP as the substitute guarantor." *Id.* The parties thereafter entered into an assumption agreement, replacing BIII with FMP. *Id.* at ¶ 31. Plaintiff alleges, however, that the Individual Defendants took FMP's substantial revenues for themselves, took on additional guaranty obligations for Alamo's debt despite Kemp and another agent's assertions that there were no such debt obligations. *Id.* at 33-34. As a result of these actions, Plaintiff alleges that it was never repaid its investment as promised by both Kemp's assertions and the parties' agreement.

Plaintiff asserts five causes of action: (1) breach of the guaranty against Defendant FMP; (2) statutory fraud pursuant to the Texas Business and Commerce Code § 27.01 against the Individual Defendants; (3) constructive trust against the Individual Defendants; (4) civil conspiracy against the Individual Defendants; and (5) fraudulent inducement against all Defendants. *See id.* Defendants move to dismiss counts II, IV and V under the theory that Plaintiff fails to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *See* docket no. 11. Specifically, Defendants assert that Plaintiff's fraud claims (counts II and V) do not attribute specific representations to specific defendants, and that Plaintiff's fraudulent

3

inducement claim (count V) fails to identify the specific representation on which it relied. *Id.* With respect to Plaintiff's civil conspiracy claim (count IV), Defendants argue that Plaintiff's claim fails because it does not describe a specific meeting of the minds. *Id.*

## ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires courts to determine whether a complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007). In making this determination, courts must assume the complaint's factual allegations, but not its legal conclusions, are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680-81 (2009). Moreover, courts should construe the factual allegations in the light most favorable to the plaintiff, as 12(b)(6) motions to dismiss are "viewed with disfavor and [are] rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). With respect to claims alleging fraud, Federal Rule of Civil Procedure 9(b) establishes a heightened "particularity" standard. "Particularity" generally requires the "who, what, when, where, and how" of an alleged fraud. *Musket Corp. v. Suncor Energy (U.S.A.) Mktg, Inc.*, 759 F. App'x 280, 288 (5th Cir. 2019). Rule 9(b), however, does not require "fact pleading," but rather only requires "simple, concise, and direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (internal quotations and citations omitted).

Defendants argue that Plaintiff's fraud claims fail to meet this "particularity" standard. First, they argue that Plaintiff fails to identify the specific individuals who made the specific false statements. Docket no. 11. To support this proposition, Defendants primarily cite to a Ninth Circuit case, which states that "[w]ith different actors playing different parts, it is not enough to

'lump' together the dissimilar defendants and assert that 'everyone did everything.'" *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018). However, the Ninth Circuit was citing a case consisting of a scheme of 29 individuals, 10 businesses and a church, not, as here, four individuals alleged to make up a partnership. *Id.* Indeed, the Ninth Circuit in that same case stated that a "complaint need not distinguish between defendants that had the exact same role in a fraud." *Id.* As described above, Plaintiff alleges that the Individual Defendants acted as partners, owning and operating Alamo, BIII Wings, and FMP. *See* docket no. 1 at ¶¶ 14-20. Additionally, Plaintiff alleges that in the lead up to the final agreement, Kemp was acting on behalf of the other Individual Defendants when he assured Plaintiff's investor that BIII would be an adequate guaranty and that its previously successful business operations would not change.[1] *See Id.* at ¶ 15-19. The Individual Defendants then collectively signed agreements causing BIII and then FMP to provide a guaranty for the investment into Alamo. *Id.* at ¶¶ 21-25. Accordingly, Plaintiff alleges that the Individual Defendants did not play dissimilar roles in executing the alleged fraud such that Rule 9(b) requires it to differentiate with specificity their individual statements.

Defendants' second argument is that Plaintiff fails to identify the "specific representation on which it relied in support of its fraudulent inducement claim." Docket no. 11. Defendants assert that Plaintiff only alleges that "Defendants made representations about FMP, BIII, and their business operations, financial conditions, and future abilities and willingness to guaranty the RNF investment." Defendants' quotation, however, excludes the detailed factual allegations

---

[1] In their reply, Defendants assert that Plaintiff's response misquotes its own complaint when it asserted that Kemp told Plaintiff's investor, Madlinger, "that he had authority to speak for the other Individual Defendants," when the complaint actually says Kemp represented he had authority to *act* on their behalf. Docket no. 17. However, the Court notes that the preceding line in the complaint alleges Kemp was the Individual Defendants' *spokesperson*. Docket no. 1 at ¶ 15.

5

stated earlier in the complaint and described above. As Plaintiff notes in its response, the Federal Rules of Civil Procedure do not require it to continually restate each of the factual allegations under each claim. Indeed, the fraudulent inducement claim states that pursuant "to Fed. R. Civ. P. 10(c), [Plaintiff] incorporates by reference all of the forgoing allegations as if fully set forth herein." *Id.* at ¶ 79. The incorporated allegations claim, for instance, that the Individual Defendants induced Plaintiff's investment by stating that it would be repaid, "including as necessary by a Guarantor owned in partnership by the individual Defendants," and that, "[a]bsent this representation, [Plaintiff] would not have invested the $1.75 million." *Id.* at ¶¶ 61-62. Accordingly, the Court finds that Plaintiff adequately pleads with particularity the specific representations on which it allegedly relied on in making its investment. The Court therefore DENIES Defendants' Motion as to Plaintiff's fraud claims (counts II and V).[2]

Similarly, Defendants argue that Plaintiff's civil conspiracy claim (count IV) fails to meet the Rule 9(b) particularity requirement. Under Texas law, the elements of a civil conspiracy claim are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'" *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019), reh'g denied (Sept. 6, 2019). Specifically, Defendants argue that Plaintiff fails to plead the who, what and when of the meeting of minds element. Docket no. 11. However, Plaintiff pleads that the Individual Defendants allegedly conspired and agreed to "make false representations," specifically that Plaintiff "would be unconditionally repaid its investment plus

---

[2] In their reply, Defendants note that Plaintiff improperly pleads its fraudulent inducement claim against all Defendants. Plaintiff conceded this mistake in its response to the Motion, asserting that the allegations for fraudulent inducement concern the Individual Defendants. Docket no. 16, n.1. The Court finds that this concession is sufficient unless and until Plaintiff amends its pleading.

6

interest . . . including by a Guarantor owned and controlled by the Individual Defendants." *Id.* at ¶¶ 75-76. Defendants argue that the above statement is about a future repayment and thus cannot be an unlawful or fraudulent act, but Plaintiff's next sentence in the complaint alleges that the "representations *were* false and the Individual Defendants had no intention of fulfilling their promises." *Id.* Thus, the Court finds that this statement is plausibly a representation that could constitute fraud, forming the basis of a civil conspiracy claim. Moreover, the Court finds Defendants' argument that the failure to identify when the meeting of minds took place to be without merit. To require potential plaintiffs to know the location or other characteristics of a specific meeting of minds that they are inherently not privy to is to require fact pleading, which Rule 9(b) does not do. *See Grubbs*, 565 F.3d at 186.

Accordingly, the Court DENIES Defendants' Motion as to Plaintiff's civil conspiracy claim (Count IV). The Court therefore finds that Defendants' Motion should be DENIED.

## DISCOVERY MOTIONS

During the pendency of Defendants' Motion to Dismiss, Defendants filed a Motion to Stay Discovery Pending Ruling on Defendants' Motion to Dismiss and Brief in Support (docket no. 24). In addition to responding to this motion, Plaintiff filed a Motion to Compel Defendants to Respond to Discovery (docket no. 25). In light of this Order denying Defendants' Motion to Dismiss, the Court DENIES AS MOOT each of these discovery motions.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (docket no. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Discovery Pending Ruling on Defendants' Motion to Dismiss and Brief in Support (docket no. 24) and Plaintiff's

Motion to Compel Defendants to Respond to Discovery (docket no. 25) are **DENIED AS MOOT**.

It is so **ORDERED**.

**SIGNED** this 13 day of January, 2020.

_____
ORLANDO L. GARCIA
Chief United States District Judge